577 A.2d 547

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**William Henry REDMOND (Two Cases).**

Superior Court of Pennsylvania.

Argued Aug. 22, 1989.

Filed May 21, 1990.

Reargument Denied July 31, 1990.

288

Sandra L. Elias, Deputy Dist. Atty., Media, for Com., appellant.

Michael J. Malloy, Asst. Public Defender, Media, for appellee.

Before CIRILLO, President Judge, and KELLY and CERCONE, JJ.

CERCONE, Judge:

These appeals are from two orders of the Court of Common Pleas of Delaware County, ordering the Commonwealth to disclose the identity of a confidential informant and precluding a state trooper from testifying as a Commonwealth witness as a result of the trooper's refusal to reveal the informant's identity. We quash the appeal of one of the orders and affirm the other order of the lower court.

The instant case arose out of the unsolved murder of an eight year old girl in Trainer, Pennsylvania, which occurred thirty-nine years ago. On April 25, 1951, the victim, Jane Althoff, was found dead of asphyxiation in the cab of a truck on the grounds of a local carnival. She had been sexually molested. The murder investigation yielded several suspects, including William Henry Redmond, appellee, who at the time of the murder was a carnival worker. A warrant for Redmond's arrest was issued but never served. The last law enforcement activity in the case prior to the events leading to the present action occurred in 1969.

In May, 1986, the investigation of Jane Althoff's murder was reopened. A two-year inquiry by state trooper Malcolm Murphy led to the issuance of a criminal complaint and

arrest warrant for appellee. Appellee was arrested in Nebraska by trooper Murphy and was transported by train to Delaware County by Murphy and other police officers. During this trip, appellee allegedly made inculpatory statements in the nature of a confession to Murphy.

Appellee was formally arraigned on charges of murder,[1] voluntary manslaughter,[2] involuntary manslaughter,[3] assault with intent to ravish,[4] and kidnapping.[5] In March, 1988, he filed a request for a bill of particulars under Pa.R.Crim.P., Rule 304(a), 42 Pa.C.S.A., to which the Commonwealth did not respond. Appellee also filed a request for pretrial discovery under Rule 305. One of appellee's discovery requests was the name of the confidential informant referred to in Trooper Murphy's investigation report. According to that report, the informant had told Murphy, in the course of Murphy's investigation of another murder, that the murder of Jane Althoff in Trainer, Pennsylvania remained unsolved and that one of the suspects in the Althoff murder had been the former chief of police of Trainer, Pennsylvania, "Whitey" Triplett. The informant provided Murphy with information concerning Triplett and his involvement in criminal activities, including the protection by police at the time of the gambling and prostitution activities associated with many carnivals. Despite the information given about Triplett, Trooper Murphy's investigation led him to the conclusion that appellee, Redmond, was the perpetrator of the Althoff murder. Appellee asserted at the hearing on his request for discovery that the confidential informant's identity was necessary in order for him to prepare a defense, particularly in light of the age of the case, the consequent lack of physical evidence, and the fact that many of the individuals who would have been appropri-

1. 18 Pa.C.S.A. § 2502.
2. *Id.* § 2503.
3. *Id.* § 2504.
4. *Id.* § 4722.
5. *Id.* § 4725.

ate as witnesses are now deceased. Trooper Murphy refused to disclose the informant's identity.

After a hearing on the discovery request and the Commonwealth's failure to provide the requested information, the lower court entered an order on September 30, 1988, directing the Commonwealth to disclose the name and address of the confidential informant. The trooper again refused to reveal the informant's identity, whereupon the lower court issued an order on October 25, 1988 precluding Trooper Murphy from testifying as to any aspect of the instant case. On October 28, 1988, the Commonwealth filed a notice of appeal of the lower court's orders of September 30 and October 25, 1988.

On appeal, appellant, the Commonwealth contends that the lower court's orders were erroneous because (1) appellee failed to establish that the information requested was exculpatory, material, or necessary, and (2) the confidential informant provided the investigating officer with only background information but had no firsthand knowledge of the murder. Appellant further states that the officer was a necessary Commonwealth witness without whom the Commonwealth was prevented from proceeding.

Before considering the Commonwealth's (appellant's) contentions on appeal, the first issue which must be addressed, although it has been raised by neither party, is the appealability of the lower court's orders. *See Commonwealth v. Hunter*, 294 Pa.Super. 52, 54, 439 A.2d 745, 746 (1982) (issue of the court's jurisdiction to hear appeal of an arguably interlocutory order may be raised *sua sponte*). The jurisdiction of this court is limited to appeals from final orders of the courts of common pleas. 42 Pa.C.S.A. § 742.

Generally, a criminal defendant may appeal only from the judgment of sentence. *Commonwealth v. Bolden*, 472 Pa. 602, 373 A.2d 90 (1977); *Commonwealth v. Reagan*, 330 Pa.Super. 417, 479 A.2d 621 (1984). An appeal before final judgment will be permitted, however, in exceptional circumstances, such as where an appeal is necessary

to prevent a great injustice to the defendant, or where an issue of basic human rights or great public importance is involved. *Commonwealth v. Bolden, supra,* 472 Pa. at 610–11, 373 A.2d at 93–94. Another exception to the final judgment rule occurs in criminal cases and involves orders suppressing evidence which are generally immediately appealable although interlocutory. *Commonwealth v. Smith,* 518 Pa. 524, 544 A.2d 943 (1988). In such a case, the Commonwealth must certify in good faith that the suppression order terminates or substantially handicaps its prosecution. *Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985). The rationale of permitting the Commonwealth's appeal from a pre-trial order of suppression is that the Commonwealth should possess the right of appellate review where the effect of the pre-trial order is to terminate the prosecution. *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A.2d 304 (1963), *cert. den.* 375 U.S. 910, 84 S.Ct. 204, 11 L.Ed.2d 149 (1963).

In the instant case, the appeals of the orders of September 30, 1988 and October 25, 1988 present no exceptional circumstances. Neither appeal is necessary to prevent a great injustice to the defendant, or involves an issue of basic human rights or great public importance. Thus, neither appeal can be justified under any of these exceptions to the final judgment rule. However, the Commonwealth has suggested in its brief that this proceeding would properly be characterized as an appeal from a suppression order, thus permitting direct appeal from the orders herein. For the following reasons, we accept the Commonwealth's characterization as to the October 25, 1988 order but not in regard to the order of September, 1988.

In *Commonwealth v. Iannaccio,* 505 Pa. 414, 480 A.2d 966 (1984), *cert. denied* 474 U.S. 830, 106 S.Ct. 96, 88 L.Ed.2d 78 (1985), an initial appeal was taken from an order of the lower court directing the Commonwealth to produce a confidential informant for an *in camera* hearing. The order was entered after a hearing pursuant to the defendant's request for discovery under Pa.R.Crim.P., Rule 305

B, 42 Pa.C.S.A. (requiring disclosure by the Commonwealth of certain specified information to the defense and permitting the court to order disclosure of certain other information). Permission to appeal the order of the lower court was granted to the Commonwealth under Pa.R.A.P., Rule 1311, 42 Pa.C.S.A.[6] The Superior Court reversed the lower court's order and on appeal, the Pennsylvania Supreme Court criticized this court's characterization of the order as a suppression matter. The supreme court found that the proceeding was more properly treated as a discovery proceeding pursuant to Rule 305, *supra. Commonwealth v. Iannaccio,* 505 Pa. at 423–24, 480 A.2d at 971.

The September 30, 1988 disclosure order of the lower court is similar to the order in *Iannaccio, supra* in that it directs the Commonwealth to produce a confidential informant by revealing his identity. We would therefore characterize the lower court's September 30, 1988 order as a discovery order pursuant to Rule 305, as the supreme court did in *Iannaccio.* Since a discovery order is interlocutory in nature, the proper procedure for appeal of the September 30, 1988 order would have been a petition for permission to appeal from an interlocutory order under Rule 1311. *See Commonwealth v. Iannaccio, supra,* 505 Pa. at 426, 480 A.2d at 972. The Commonwealth in the instant case failed to file a timely appeal in this manner of the September 30, 1988 order; therefore, this court is without jurisdiction to hear the appeal. *See* 42 Pa.C.S.A. § 742 (Superior Court has jurisdiction to hear appeals of final orders of the courts of common pleas); *id.* § 702(b) (permitting interlocutory

**6.** Rule 1311 provides in pertinent part:
*(a) General Rule.* An appeal may be taken by permission under 42 Pa.C.S. § 702(b) (interlocutory appeals by permission) from any interlocutory order of a lower court or other government unit. See Rule 312 (interlocutory appeals by permission).
*(b) Petition for Permission to Appeal.* Permission to appeal from an interlocutory order containing the statement prescribed by 42 Pa. C.S. § 702(b) may be sought by filing a petition for permission to appeal with the prothonotary of the appellate court within 30 days after entry of such order in the lower court....
Pa.R.A.P., Rule 1311, 42 Pa.C.S.A.

appeal by permission); *id.,* Pa.R.A.P., Rule 1311 (requiring petition for permission to appeal an interlocutory order); *Commonwealth v. Pfender,* 280 Pa.Super. 417, 421 A.2d 791 (1980) (Superior Court without jurisdiction to hear appeal where Commonwealth did not file petition for permission to appeal as required by Rule 1311).

■ As to the order of October 25, 1988, we find it similar to a suppression order because it prevents the Commonwealth from using all its available evidence against appellee and the effect of the order, which prohibits the Commonwealth's chief witness from testifying, is to terminate the prosecution. *See Commonwealth v. Bosurgi, supra,* 411 Pa. at 63, 190 A.2d at 308 (Commonwealth's prosecution is substantially handicapped following grant of pre-trial suppression order because it cannot present *all* its available evidence). Thus, the order of October 25, 1988 possesses the requisite degree of finality which will permit its immediate appeal. *Id.,* 411 Pa. at 63–64, 190 A.2d at 308.

■ We therefore turn to the merits of appellant's appeal from the October 25, 1988 order. It is well established that the courts possess the inherent power to enforce their orders and decrees by imposing penalties and sanctions for failure to comply. *Brocker v. Brocker,* 429 Pa. 513, 241 A.2d 336 (1968), *cert. denied* 393 U.S. 1081, 89 S.Ct. 857, 21 L.Ed.2d 773 (1969). Contempt sanctions may be warranted where the Commonwealth ignores an order of court issued pursuant to the Pennsylvania rules of procedure. *Commonwealth v. Tillia,* 359 Pa.Super. 302, 518 A.2d 1246 (1986). In considering an appeal from a contempt order, great reliance must be placed upon the discretion of the trial judge. *Commonwealth v. Hawkins,* 322 Pa.Super. 199, 469 A.2d 252 (1983).

In the instant case, the Commonwealth failed to comply with the September 30, 1988 order of the lower court, requiring the Commonwealth to reveal the name of the confidential informant referred to in Trooper Murphy's investigative report and notes of investigation. The order

was issued after the Commonwealth refused to respond to appellee's request for discovery under Rule 305 of the Rules of Criminal Procedure. Pa.R.Crim.P., Rule 305, 42 Pa.C.S.A. The rule requires disclosure by the Commonwealth to the defendant's attorney "[a]ny evidence favorable to the accused which is material either to guilt or to punishment, and which is within the possession or control of the attorney for the Commonwealth. . . ." *Id.*, Rule 305 B(1)(a). The rule also makes it discretionary with the court, upon motion of the defendant for pre-trial discovery, to order the Commonwealth to permit the defendant to:

inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:

. . . . .

(d) any other evidence specifically identified by the defendant, provided the defendant can additionally establish that its disclosure would be in the interests of justice.

*Id.* If a party fails to comply with the requirements of Rule 305,

the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

*Id.*, Rule 305 E.

Rule 305 E, as we have just indicated, permits the court to enter an order which "it deems just under the circumstances" upon a party's failure to comply with Rule 305. The order of October 25, 1988, in which the lower court precluded Officer Murphy from testifying as to any aspect of the instant case, was issued because the lower court determined that the Commonwealth had failed to comply with its prior order. The prior order of September 30, 1988, was issued in response to appellee's request for discovery under Rule 305 B. Therefore, the lower court acted within the apparent authority of Rule 305 E in issuing the order of

October 25, 1988 because it determined that the Commonwealth had failed to comply with its prior order issued pursuant to Rule 305 B. Additionally, since the Commonwealth, in failing to provide appellee with the name of the confidential informant, ignored an order of court issued pursuant to the Pennsylvania rules of procedure, the lower court was warranted in imposing contempt sanctions. *Commonwealth v. Tillia, supra.*

█ Our inquiry does not end there, however. We have previously determined that we are without jurisdiction to consider the Commonwealth's appeal from the lower court's order of September 30, 1988. Since we do not possess jurisdiction of the appeal of that order, it would appear that we are precluded from considering its merits. However, in determining the propriety of the lower court's order of October 25, 1988, we find that the merits of the September 30, 1988 order inescapably require our review. That is because authority to issue a remedy under Rule 305 E, *supra,* is granted only if "a party has failed to comply with this rule." Pa.R.Crim.P., Rule 305 E, 42 Pa.C.S.A., referring generally to Rule 305. The facts of the case indicate that the Commonwealth did not comply with the lower court's order of September 30, 1988; therefore, we must examine the Commonwealth's non-compliance with the disclosure order to determine if that non-compliance was equivalent to a non-compliance with Rule 305, thus permitting the lower court to act pursuant to the remedy provision of Rule 305 E. This inquiry will logically require us to examine the merits of the September 30, 1988 order. However, in doing so, we are not resurrecting the quashed appeal of that order; we are simply considering whether the October 25, 1988 order was proper considering the prior disclosure order. *See Okkerse v. Howe,* 521 Pa. 509, 556 A.2d 827 (1989) (Superior Court erred in reviewing merits of quashed appeal; opinion was purely advisory).

Our first inquiry in determining whether the Commonwealth failed to comply with Rule 305 when it refused to obey the lower court's order of September 30, 1988 is to

determine if that order was issued in accordance with the requirements of the rule. The record reveals that the appellee filed with the court a request for discovery "pursuant to Pennsylvania Rule of Criminal Procedure 305(A) [sic] and 305(b) [sic]." At a hearing on this motion, appellee specifically requested the identity of the confidential informant referred to in Officer Murphy's report. The court took the matter under advisement, and on September 30, 1988, issued an order requiring the Commonwealth to disclose the confidential informant's name. On October 25, 1988, after discovering that the Commonwealth had failed to comply with her prior disclosure order, the lower court, the Honorable Rita E. Prescott presiding, issued a decree prohibiting any testimony by the officer.

Appellant claims that the disclosure order of September 30, 1988 was erroneous for two reasons: (1) Officer Murphy's report did not contain evidence material to appellee's guilt or innocence, and (2) appellee did not establish that disclosure of the confidential informant's identity was material to the preparation of a defense, reasonable, or in the interests of justice as required by Pa.R.Crim.P., Rule 305 B(2)(d). As we have previously indicated, Rule 305 B(1) requires that evidence which is favorable to the accused and which is material to either guilt or to punishment is subject to mandatory disclosure by the Commonwealth in all court cases. Pa.R.Crim.P., Rule 305 B(1), 42 Pa.C.S.A.

The comment to Rule 305 indicates that the rule is intended to apply the constitutional guarantees mandated in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and subsequent decisions. Pa.R.Crim.P., Rule 305, comment, 42 Pa.C.S.A. *Brady* requires disclosure by the government of evidence that is both exculpatory and material. *United States v. Starusko*, 729 F.2d 256 (3d Cir.1984). Exculpatory evidence includes "material that goes to the heart of the defendant's guilt or innocence as well as that which might well alter the jury's judgment of the credibility of a crucial prosecution witness." *Id.* at 260, citing *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct.

763, 766, 31 L.Ed.2d 104 (1972). When the reliability of a given witness may be determinative of guilt or innocence, nondisclosure of evidence affecting credibility of the witness falls within the general rule of *Brady,* making such evidence exculpatory. *Giglio v. United States, supra. See also United States v. Starusko, supra* at 260. Exculpatory evidence has also been defined as "evidence which extrinsically tends to establish defendant's innocence of the crimes charged, as differentiated from that which, although favorable, is merely collateral or impeaching." *Commonwealth v. Gee,* 467 Pa. 123, 131, 354 A.2d 875, 878 (1976).

In the instant case, Officer Murphy was to be the chief witness for the prosecution. The evidence which he would provide consisted in no small part of the confession which appellee allegedly made to him while travelling in custody from Nebraska. Because of the age of the case, other evidence is unavailable, and therefore, the case would turn largely on Officer Murphy's testimony. The information possessed by the confidential informant concerning another individual who had once been a suspect in the case could certainly, depending on the strength of that information, affect the factfinder's evaluation of the credibility of the testimony Officer Murphy would offer. That being the case, the identity of the informant was exculpatory information under the test set forth in *Giglio v. United States, supra. See also United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (impeachment evidence falls within the *Brady* rule).

However, as *Brady* and *Giglio* indicate, to be admissible, exculpatory evidence must also be material. Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Pennsylvania v. Ritchie,* 480 U.S. 39, 57, 107 S.Ct. 989, 1001, 94 L.Ed.2d 40, 57 (1987), *quoting United States v. Bagley, supra* 473 U.S. at 682, 105 S.Ct. at 3383, 87 L.Ed.2d at 494.

The standard of materiality set forth in *Ritchie, supra,* and *Bagley, supra,* was applied to determine whether a reversal of a judgment of sentence was required where there was a failure to disclose exculpatory evidence. In this case, we must evaluate the materiality of the evidence from a pre-trial standpoint. Unfortunately, this will require us to engage in speculation concerning the possible outcome of a trial of this matter, which we are reluctant to do. However, we can conclude that the requested evidence in this case related to information about a alternative suspect in a thirty-nine year old murder case in which other sources of evidence are unavailable due to the age of the case. We find the existence of such evidence sufficient to satisfy the "reasonable probability" standard set forth in *Bagley, supra.* There is a reasonable probability, in our view, that this information, if disclosed to the defense, would make a difference in the outcome of the case. The information possessed by the informant could, in itself, produce sufficient doubt about the identification of appellee as the perpetrator of the murder as to render a guilty verdict uncertain.

We conclude that the requested evidence was both exculpatory and material. Therefore, it meets two of the requirements of Rule 305 B(1)(a) concerning mandatory disclosure of evidence by the Commonwealth. The third requirement of that rule is that the evidence be "within the possession or control of the attorney for the Commonwealth." *See* Pa.R.Crim.P., Rule 305 B(1)(a), 42 Pa.C.S.A. While the evidence requested here was not within the *possession* of the Commonwealth's attorney, it can certainly be said that it was within his control in the sense that Officer Murphy was to be presented as the chief witness for the prosecution. If the Commonwealth was unable to obtain the cooperation of its own witness in revealing the informant's identity as required under the mandatory disclosure provisions of Rule 305 B, we fail to discern any reason or logic that would prohibit the lower court from precluding that witness' testimony. We conclude that since the Commonwealth was required to disclose the evidence under Rule

305 B, the lower court did not err in ordering such disclosure on September 30, 1988. *See* Rule 305 E. Furthermore, since the Commonwealth failed to comply with the disclosure order which we have found to be properly entered, the lower court acted within its authority under Rule 305 E to "enter such other order as it deems just under the circumstances" when it issued its order of October 25, 1988.

We also find, although it is not necessary given our decision above, that the lower court acted appropriately under Rule 305 B(2)(d) in ordering disclosure of the informant's identity on September 30, 1988. Rule 305 B(2)(d) permits the court to order disclosure of a confidential tipster who is not an eyewitness as long as production of the informant would be: (1) material to the defense; (2) reasonable; and (3) in the interests of justice. *Commonwealth v. Bonasorte*, 337 Pa.Super. 332, 355, 486 A.2d 1361, 1372–73 (1984). In analyzing the latter requirement, the *Bonasorte* court held that the balancing test of *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), should be applied. *Commonwealth v. Bonasorte, supra*, 337 Pa.Super. at 352–53, 486 A.2d at 1372–73. The essence of this test "is that a court confronted with a request for disclosure of an informant's identity must balance the defendant's need against the public interest. *Id.*, 337 Pa.Superior Ct. at 354, 486 A.2d at 1373. Specifically, *Roviaro* requires:

> Where the disclosure of an informer's identity, or of the contents of his communication is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege [government's privilege to withhold identity of confidential informants] must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action.
>
> .    .    .    .    .
>
> We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense.

Whether a proper balance renders nondisclosure errone-
ous must depend on the particular circumstances of each
case, taking into consideration the crime charged, the
possible defenses, the possible significance of the inform-
er's testimony, and other relevant factors.

*Roviaro v. United States, supra,* 353 U.S. at 61–62, 77 S.Ct.
at 628–29, 1 L.Ed.2d at 645–46. In *Bonasorte, supra,* the
court held that the *Roviaro* test, while generally applied in
the context of trial proceedings, is also applicable in the
pre-trial setting. *Commonwealth v. Bonasorte, supra,* 337
Pa.Super. at 353, 486 A.2d at 1373–74. *See also Common-
wealth v. Iannaccio,* 505 Pa. 414, 480 A.2d 966, 973 (1984)
(Opinion in Support of Reversal, Larsen, J.). Specifically,
the *Bonasorte* court applied the *Roviaro* test to the circum-
stances present in that case, which included a factual record
which demonstrated a basis upon which the suppression
court could have found that misrepresentations were
present in the affidavit of probable cause regarding the
source of information therein, that the information was
essential to a finding of probable cause, and that there was
no other way for the defendant to substantiate the nonex-
istence of the informant, other than to request his produc-
tion.

■■■ While the instant case involves a somewhat differ-
ent factual situation, we find the rationale of *Bonasorte* no
less applicable. The dissent finds *Bonasorte* "materially
distinguishable" from the instant case because no search
warrant was involved and because the informant's tips
herein did not lead to the alleged confession by Redmond.
The dissent also finds it a "mere fortuitous coincidence"
that Officer Murphy, who knows the identity of the infor-
mant, is the same officer to whom Redmond allegedly
confessed. We do not agree. While no search warrant was
involved in the instant case, the information contained in
Officer Murphy's investigative report led to the issuance of
a warrant for appellant's arrest. In addition, while the
informant's tips in this case did not lead to the alleged
confession of appellant, this fact is not decisive because

Officer Murphy chose not to follow through on the information concerning Triplett, for reasons which are unclear. In addition, we can discern no compelling reason to limit application of the *Bonasorte* rationale to pre-trial matters involving search warrants. The information sought here by the defense, while it did not lead to issuance of the warrant of arrest, was nevertheless essential information to the case, for the reasons we have previously discussed, as was the withheld information in *Bonasorte*. Thus, we will apply the *Bonasorte* test to the facts of the instant case.

The first requirement is that production of the informant be material to the defense. *Commonwealth v. Bonasorte, supra,* 337 Pa.Super. at 355, 486 A.2d at 1374. In the instant case, the confidential informant told Officer Murphy that a suspect in the Jane Althoff murder had been the former chief of police of Trainer, Pennsylvania, Herman "Whitey" Triplett. The informant explicated at length reports of Triplett's involvement in criminal activities, including protection of illegal activities associated with carnivals. The informant also indicated that a rumor had been circulated in the community that Triplett had been involved in the Althoff murder. Such information, involving a potential alternate suspect in the case, was certainly material to appellant's preparation of a defense, particularly in light of the age of the case and the consequent lack of physical and testimonial evidence.

In addition, the request was reasonable. *See Commonwealth v. Bonasorte, supra.* Again, the age of the case is a significant, overriding factor. Since physical evidence is nonexistent and testimonial evidence cannot be obtained because of the death of many of the potential witnesses, appellant lacks the usual sources of evidence from which a defense can normally be prepared. In addition, the Commonwealth has not alleged that disclosure of the informant's identity would result in danger to the informant. Therefore, we find appellant's request reasonable.

Finally, the request for disclosure of the informant must be in the interests of justice. *Commonwealth v. Bona-*

*sorte, supra.* In making this determination, the court must balance the public's interest in protecting the flow of information with the defendant's right to prepare his defense. *Id.; United States v. Roviaro, supra.* Here, as we have already stated, the case is hoary with age and involves very serious crimes, including first degree murder. Most of the evidence is unavailable due to the age of the case. Therefore, every possible type of evidence should properly have been procured in order to ensure a just disposition of this severely delayed prosecution. The lower court's serious concern with appellant's ability to prepare his defense was not misplaced in these circumstances. In fact, the officer's refusal to disclose the information casts a cloud of suspicion upon his investigation. The officer indicated that this was not a case in which the information could not be disclosed because of potential danger to the informant. Nor did he allege that the informant was an ongoing source of information. In these circumstances, we find that the ability of the appellee to prepare his own defense outweighed the Commonwealth's interest in protecting the flow of information to the police. Thus, the lower court's order of September 30, 1988 was proper under Rule 305 B(2)(d).

The comment to Rule 305 also supports this result. That comment provides criteria for evaluating the extent of discovery under the "Discretionary with the Court" sections of Rule 305. Rule 305 B(2)(d) is one of those sections. Specifically, the comment provides:

(a) Procedure prior to trial should serve the following needs:

(i) to promote an expeditious as well as fair determination of the charges, whether by plea or trial;

(ii) to provide the accused sufficient information to make an informed plea;

(iii) to permit thorough preparation for trial and minimize surprise at trial;

(iv) to avoid unnecessary and repetitious trials by exposing any latent procedural or constitutional issues and affording remedies therefor prior to trial;

(v) to reduce interruptions and complications of trial by identifying issues collateral to guilt or innocence and determining them prior to trial; and

(vi) to effect economies in time, money and judicial and professional talents by minimizing paperwork, repetitious assertions of issues, and the number of separate hearings.

(b) These needs can be served by:

(i) fuller discovery;

(ii) simpler and more efficient procedures; and

(iii) procedural pressures for expediting the processing of cases.

Sec. 1.2: Scope of Discovery.

In order to provide adequate information for informed pleas, expedite trials, minimize surprise, afford opportunity for effective cross-examination, and meet the requirements of due process, *discovery prior to trial should be as full and free as possible* consistent with protection of persons, effective law enforcement, the adversary system, and national security.

Comment, Pa.R.Crim.P., Rule 305, 42 Pa.C.S.A. (emphasis added).

As the language of the comment indicates, judges are to be guided by principles of full and free discovery in applying the "Discretionary with the Court" requirements of Rule 305. This case is not one in which the effectiveness of law enforcement will be diminished by disclosure of the requested information. Therefore, the lower court's order of September 30, 1988 is consistent with the intent of "Discretionary with the Court" sections of the rule as expressed in the comment to Rule 305.

██ One final issue must be addressed. The dissent contends that the lower court addressed the sanctions of its order of October 25, 1988 to the wrong party. In the dissent's view, any sanctions for failure to comply with the order of September 30, 1988 were properly addressed to

Officer Murphy individually rather than to the Commonwealth. We disagree.

When a court is confronted with a party's failure to comply with Rule 305, it has broad discretion in choosing an appropriate remedy. *Commonwealth v. Gordon,* 364 Pa. Super. 521, 528 A.2d 631 (1987); *Commonwealth v. Palmer,* 319 Pa.Super. 56, 58, 465 A.2d 1050, 1052 (1983). That broad discretion is illustrated by the specific language of Rule 305 E, which authorizes the court to "enter such other order as it deems just under the circumstances" upon a party's failure to comply with the rule. Pa.R.Crim.P., Rule 305 E, 42 Pa.C.S.A. In examining the trial court's October 25, 1988 ruling in the instant case for compliance with this broad discretionary standard, we must note that, as the dissent points out, this court has previously held that termination of the prosecution for violation of discovery rules has been held "too drastic" a penalty. *See Commonwealth v. Parente,* 294 Pa.Super. 446, 452, 440 A.2d 549, 552 (1982); *Commonwealth v. Yost,* 348 Pa.Super. 297, 502 A.2d 216 (1985). While technically the order of October 25, 1988 does not terminate the prosecution, it does, as we have previously held, effectively yield this result because it prohibits the Commonwealth from utilizing all its available evidence, *see Commonwealth v. Bosurgi, supra,* and presumably, without Officer Murphy's testimony concerning Redmond's "confession," the Commonwealth's case would be substantially compromised.

Nonetheless, we find it more appropriate in this situation to rely on a different rule of law. That rule relates to the remedy available to a court in a situation in which an informant's identity is ordered disclosed and the government refuses to comply with the disclosure order. In such a case, "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause," the court may dismiss the action upon the government's failure to comply. *Commonwealth v. Carter,* 427 Pa. 53, 59, 233 A.2d 284, 287 (1967), *quoting*

*Roviaro v. United States, supra.* We have already determined that the disclosure of the informant's identity was relevant, would be helpful to appellee in the preparation of his defense, and was essential to a fair determination of this cause. While the lower court's action on October 25, 1988 did not constitute a dismissal, the effect of the ruling was the same, and therefore, under the standard of *Carter* and *Roviaro, supra,* was not an abuse of discretion.

In reaching this conclusion, we note also that the court in *Commonwealth v. Bonasorte, supra,* affirmed the lower court's suppression of all evidence produced by the police search in that case after the Commonwealth refused to disclose the identity of a confidential informant following a discovery request under Rule 305 B(2)(d). As we have indicated above, the circumstances of the instant case are not sufficiently distinguishable from *Bonasorte* as to require, in our view, a different result. While the informant's information in *Bonasorte* led directly to the issuance of the warrant, and in this case did not, the information sought here is just as crucial and necessary for a fair determination of the case, for the reasons we have set forth, *supra.* Thus, it was appropriate for the court in this case to suppress all evidence possessed by Trooper Murphy.

In addition, the cases cited by the dissent for the proposition that the penalty for contempt must be imposed on the offending officer do not, in our opinion, require that result. In *Commonwealth v. Carson,* 510 Pa. 568, 510 A.2d 1233 (1986), the assistant district attorney who was prosecuting the case failed to appear at the scheduled time for trial, resulting in a dismissal of the charges against the appellant. The Superior Court reversed the lower court's dismissal of the charges, and the Pennsylvania Supreme Court affirmed the Superior Court's action. In so holding, the Supreme Court emphasized that

> [t]he failure of a party to appear at a scheduled time must involve more than a mere failure of time; the failure must involve a failure of justice or prejudice to a defendant to justify the discharge of a criminal action.

> When such interests are not involved, the offending party may be otherwise sanctioned without defeating the public interest. Such was not demonstrated here.

*Id.*, 510 Pa. at 572, 510 A.2d at 1235. Thus, the court found that the lower court could properly have imposed on the offending representative of the Commonwealth the sanction of contempt with its various penalties. What the court did not find was that the Commonwealth cannot suffer a dismissal of an action where the offending Commonwealth official fails to explain his/her failure to appear or, as here, fails to disclose the identity of a confidential informant, in a case that involves a failure of justice or prejudice to a defendant. In such a case, dismissal of the action is justified.

In our opinion, the failure of the officer in this case to disclose the confidential informant involved a failure of justice and a prejudice to appellee because it prevented appellee from preparing a viable defense. Thus, even under *Commonwealth v. Carson, supra,* the lower court did not err in imposing its October 25, 1988 order on the Commonwealth for Officer Murphy's failure to comply.

*Commonwealth v. Ferguson,* 381 Pa.Super. 23, 552 A.2d 1075 (1988), cited by the dissent, is also distinguishable. In that case, the court stated that a financial sanction, if appropriate because of the failure of a Department of Welfare claims agent to appear at appellees' sentencing on following their plea of guilty to charges of welfare fraud, should be visited upon the claims agent in his individual capacity and "not upon the taxpayers of this Commonwealth via forfeiture of their collective right to restitution of the moneys fraudulently obtained by appellees." *Id.,* 381 Pa.Superior Ct. at 52, 552 A.2d at 1090. However, the court also noted that the sanction which the lower court declined to impose upon appellees, i.e., forfeiture of restitution under 62 P.S. § 481(c) (outlining penalties for false statements in connection with applications for public assistance), was not authorized by 42 Pa.C.S.A. § 4133 [7] as a sanction for con-

---

7. 42 Pa.C.S.A. § 4133 provides:
    *§ 4133. Commitment or fine for contempt*

tempt and therefore, imposition of such a sentence on appellees would have constituted an *ultra vires* act. Imposition of such a sentence would also have been unrelated to the failure of the Department of Welfare claims agent to appear at sentencing. In contrast, the applicable rule for imposition of sanctions in the instant case, Pa.R.Crim.P., Rule 305, *supra,* provides broad authority for imposition of remedies by the trial court upon failure of a party to comply with the rule, and in this case was related to the state trooper's failure to comply.

Finally, the justice of this case requires affirmance of the lower court's October 25, 1988 order. While perhaps it may be generally agreed that the Commonwealth should not be made to suffer a trial defeat because of some dereliction of duty on the part of one of its employees, neither should a defendant in such a case suffer or be deprived of his right to prepare a defense. No *ipso facto* determination can be made in such a case. The outcome will depend on all the circumstances of record. There will be some instances in which the Commonwealth will be required to shoulder the burden of responsibility of its employees' failures. In this case, almost forty years have passed since the occurrence of the crime which is the subject of this action. Surely there should be some final resolution to this matter. To impose a sanction of contempt upon the derelict officer without holding the Commonwealth accountable for the non-compliance of its employee to a valid order of court would only permit the case to continue without predictable end. This the trial court would not condone, and we agree that the remedy selected by the lower court was the only recourse at her disposal for fairly dealing with the consequences of the officer's recalcitrance.

We conclude that the lower court properly ordered the Commonwealth to disclose the identity of the confidential

Except as otherwise provided by statute, the punishment of commitment for contempt provided in section 4132 (relating to attachment and summary punishment for contempts) shall extend only to contempts committed in open court. All other contempts shall be punished by fine only.

informant, and therefore possessed the authority to issue its October 25, 1988 order prohibiting any testimony by Officer Murphy concerning this case.

Appeal quashed from order of September 30, 1988; order of October 25, 1988 affirmed.

KELLY, J., files a dissenting opinion.

KELLY, Judge, dissenting:

I respectfully dissent. I agree that the September 30, 1988 disclosure order was interlocutory, and immediately appealable only by permissive appeal. I further agree with the majority's conclusion that the October 25, 1988 discovery sanctions order is appealable, as well as with the majority's statement that, "in determining the propriety of the lower court's order of October 25, 1988, we find that the merits of the September 30, 1988 order inescapably requires our review." Majority opinion, *supra*, at 555. However, unlike the majority, I find that the disclosure order was improper. Moreover, I find additionally that assuming, *arguendo*, that the disclosure order was proper, the sanction imposed for the violation of the disclosure order was still an abuse of discretion. I would vacate both orders. My reasons are as follows.

I. *Hydraulic Forces and Well–Settled Principles*

Associate Justice Oliver Wendall Holmes, Jr., writing in dissent in *Northern Securities v. United States*, 193 U.S. 197, 24 S.Ct. 436, 48 L.Ed. 679 (1903), set forth his famous *dictum* that:

> Great cases, like hard cases, make bad law. For great cases are called great, not by reason of their real importance in shaping the law of the future, but because of some accident of immediate overwhelming interest which appeals to the feelings and distorts the judgment. These immediate interests exercise a kind of hydraulic pressure which makes what previously was clear seem doubtful,

and before which even well-settled principles of law will bend.

193 U.S. at 400–01, 24 S.Ct. at 468, 48 L.Ed. at 726.

The instant case involves the highly notorious murder of an eight year old girl, *thirty nine years ago*. After so much time, an aged suspect has been brought before the bar of our courts to answer a charge of murder. Under ordinary circumstances, one might be tempted to conclude out-of-hand that reasonable doubt *must* arise from the simple fact of the passage of so great a period of time; in the instant case, however, there is evidence of an *alleged* recent confession.

The majority, in all candor, has stated clearly that, "the age of the case is a significant overriding factor" in their analysis. (Majority Opinion, *supra*, at 302–303). I respect (and to some extent share) their concerns regarding the age of this case. Nonetheless, I am unwilling to allow those concerns to become a hydraulic force which bends the well-settled principles of law which control the disposition of this appeal.

Though murder prosecutions are subject to no statute of limitations (42 Pa.C.S.A. § 5551), due process restrictions may preclude prosecution in certain circumstances. *See United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *Commonwealth v. Patterson*, 392 Pa. Super. 331, 339–340, 572 A.2d 1258, 1262–63 (1990); *Commonwealth v. Akers*, 392 Pa.Super. 170, 183–185, 572 A.2d 746, 752–53 (1990); *Commonwealth v. Graizer*, 391 Pa.Super. 202, 570 A.2d 1054 (1990). Knowing that appellant may address the "age of the case" issue directly, *via* a due process challenge to the charges, I am less inclined than I might be otherwise to permit the "age of the case" to exert hydraulic force upon my analysis of the well settled principles which control our review of the discovery sanctions/suppression order currently before this Court on ap-

peal.[1]

## II. *Jurisdiction*

I agree that the disclosure order was entered in accordance with the trial court's determination that the identity of the officer's confidential informant was discoverable under Pa.R.Crim.P. 305(B)(2)(d). As such, the order was immediately appealable only by special permissive allowance of appeal. *See Commonwealth v. Iannaccio*, 505 Pa. 414, 480 A.2d 966 (1984), *cert. denied* 474 U.S. 830, 106 S.Ct. 96, 88 L.Ed.2d 78 (1984). Hence, quashal of the appeal taken from the trial court's order of September 30, 1988 is required. I agree with that portion of the majority's analysis.

I also agree with the majority that when the trial court imposes a discovery sanction under Pa.R.Crim.P. 305(E) which directs the suppression of evidence, the finality and appealability of such an order must be determined in accordance with the rationale in *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985) and *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963). *See Commonwealth v. Smith*, 518 Pa. 524, 544 A.2d 943 (1988); *Commonwealth v. Moore*, 378 Pa.Super. 379, 548 A.2d 1250 (1988); Darlington, *et al.*, *Pennsylvania Appellate Practice*, § 341.12, at 147 & nn. 11 & 11.2 (1986 & 1989 Cum. Supp.) ("orders that handicap the prosecution in a manner similar to the handicap imposed by a suppression order may be appealable under the same theory"). The effect of such discovery sanctions is indistinguishable from a suppression order in this context.

In *Commonwealth v. Maguigan*, 511 Pa. 112, 511 A.2d 1327 (1986), our Supreme Court addressed the merits of a disclosure order upon appeal from civil contempt sanctions imposed for failing to comply with a disclosure order, notwithstanding the attorney's failure to seek permissive interlocutory review of the disclosure order. I can see no reason to treat the Commonwealth differently here.

1. I in no way suggest favor or disfavor of a due process, remoteness claim in this case. That issue must be addressed first by the trial court, if appellant in fact decides to pursue such a claim.

As the majority notes, it does not follow that a failure to seek *permissive* interlocutory appeal waives a challenge to the disclosure order on appeal from a final order imposing discovery sanctions for violation of the disclosure order. Permissive interlocutory appeals are just that—permissive. To imply waiver of a challenge to the merits of the disclosure order based upon the failure to seek permissive interlocutory appeal of the order, would be to create a self-contradictory *mandatory,* permissive interlocutory appeal. The majority has properly declined to do so here. Hence, I agree with the majority's conclusion that review of the sanction order requires review of the disclosure order.

The Commonwealth has certified that this appeal is proper under *Dugger* and *Bosurgi* because the sanction order involved here suppressed crucial evidence of Redmond's alleged recent confession, and thus substantially handicapped the prosecution. Consequently, I agree with the majority that the sanction order is properly before us for review.

### III. *Merits of the Disclosure Order*

In October 1985, Officer Murphy interviewed a confidential informant regarding a wholly unrelated murder case. The informant mentioned the Althoff murder in which appellant herein was subsequently charged. The informant indicated that he/she was aware that one of the police's suspects in that murder had been former Chief of Police "Whitey" Triplett.

The informant indicated that he/she had no personal knowledge of the possible culpability of Police Chief Triplett, and that his/her sole source of information was "common rumor" in the community. In his report, Officer Murphy conjectured that the rumor had probably arisen as the result of Police Chief Triplett's general reputation for corruption (shaking down motorists for illegal and unreported traffic fines, and offering protection for hire to illegal gambling and prostitution operations, especially with regard to carnivals) and the fact that he had left town with a teenage girl he had been "counselling." Officer Murphy's

report further indicated that "review of the original case file prepared by [County] Detectives does *not* suggest that Triplett was involved in the murder of Althoff." (General Investigation Report 10/10/87 at 4). (Emphasis added).

Notwithstanding these facts, the majority considers the identity of the confidential informant *exculpatory* and *material*. I do not. The majority grounds its conclusion on the premise that in a thirty-nine year old murder case the slenderest reed may be sufficient to sustain a reasonable doubt. True, perhaps. But here, there is no reed at all, only baseless conjecture.

The majority's suggestion that, "Officer Murphy chose not to follow through on the information concerning Triplett, for reasons which are unclear," (Majority's Opinion, *supra*, at 302), is wholly unfounded. The uncontradicted evidence in this record establishes that Officer Murphy did follow-up on the informant's tip but that it carried him no further than its genesis, *i.e.* unsubstantiated rumor.

*The confidential informant stated that his/her information was all second hand hearsay based upon recollection of a rumor which circulated years earlier.* The rumor had been investigated in 1963, and Officer Murphy reported that his review of the file relating to that investigation in 1987 indicated that Police Chief Triplett was not involved in the Althoff murder. In 1987, Officer Murphy concluded that a plausible but insubstantial basis for the rumor had been discovered and that further investigation of the confidential informant's "tip" would be fruitless. Finally, by the time of Officer Murphy's investigation in 1987, Police Chief Triplett was dead. What *inaction* would the majority have Officer Murphy explain? I can discern none.

For evidence to be *exculpatory* and *material*, I would find that it must *at least* be admissible or lead to admissible evidence. Here, there is only a hearsay report of the recollection of common rumor circulated years earlier.

Suppose the officer's word to the informant (and the value of his word to all subsequent, prospective informants)

were to be broken and the identity of this informant were disclosed. What then? There is not the least scintilla of evidence to support a conjecture that the informant could provide or lead to admissible exculpatory evidence. Indeed, there is clear indication that the informant could not.

Yet, the majority finds the officer's refusal to disclose the informant's identity to have involved the suppression of *material* and *exculpatory* evidence. I find this both unfounded in fact, and directly contrary to well settled law on this point.

Our Supreme Court has held that *the defendant* bears the burden to establish that disclosure of the identity of a confidential informant is "reasonable" and "in the interest of justice." *See Commonwealth v. Iannaccio, supra,* 480 A.2d at 972 (where defendant could not meet burden, disclosure could not be required); *Commonwealth v. Tolassi,* 489 Pa. 41, 55, 413 A.2d 1003, 1009–10 (1980) (same); *Commonwealth v. Herron,* 475 Pa. 461, 466, 380 A.2d 1228, 1230 (1970) (defendant failed to meet his burden). This Court has repeatedly held that *a vague assertion that disclosure might be helpful, or that it might lead to exculpatory evidence does not meet the defendant's burden. See e.g. Commonwealth v. Bonasorte,* 337 Pa.Super. 332, 356, 486 A.2d 1361, 1374 (1984); *Commonwealth v. Fleck,* 324 Pa. Super. 227, 235, 471 A.2d 547, 550 (1984); *Commonwealth v. Davis,* 318 Pa.Super. 507, 515, 465 A.2d 669, 672 (1983); *Commonwealth v. Knox,* 273 Pa.Super. 563, 568, 417 A.2d 1192, 1194 (1980); *Commonwealth v. Dorsey,* 266 Pa.Super. 442, 447–48, 405 A.2d 516, 519–20 (1979); *Commonwealth v. Bradshaw,* 238 Pa.Super. 22, 29, 364 A.2d 702, 706 (1975); *Commonwealth v. Williams,* 236 Pa.Super. 184, 190, 345 A.2d 267, 270 (1975); *Commonwealth v. Pritchett,* 225 Pa.Super. 401, 407–08, 312 A.2d 434, 438 (1973). Our Supreme Court held precisely the same thing in *Herron, supra,* 380 A.2d at 1230.

The fact that the informant "had no first hand knowledge of the case," plainly weighs heavily (if not conclusively), against compelling disclosure. When the informant is an

eyewitness to the crime at issue, a compelling case can be made for disclosure. *Commonwealth v. Garvin,* 448 Pa. 258, 293 A.2d 33 (1972); *Commonwealth v. Carter,* 427 Pa. 53, 233 A.2d 284 (1967). Conversely, when the informant is *not* an eyewitness, the basis for disclosure is diminished considerably. *Commonwealth v. Herron, supra,* 380 A.2d at 1231 (emphasizing that the informant was *not* an eyewitness); *Commonwealth v. Culberson,* 467 Pa. 424, 429–30, 358 A.2d 416, 418 (1976) (distinguishing *Carter* and *Garvin* because the informant was *not* an eyewitness); *Commonwealth v. Garcia,* 261 Pa.Super. 296, 300, 396 A.2d 406, 408 (1978) (emphasizing that informant was *not* an eyewitness, citing *Culberson* ). It follows then, that when the informant is not only *not* an eyewitness, but had "no first hand knowledge of the case," and merely had provided tips based solely on hearsay in the form of common rumor wholly unrelated to the *defendant's* alleged participation in the crime charged, the case for disclosure is considerably *weaker* still.

*Culberson* is particularly relevant in this respect. In *Culberson* our Supreme Court held that disclosure of a confidential informant's identity was *not* appropriate when *the defendant failed to establish that the informant was an eyewitness,* and when *the information provided by the informant did not relate to the defendant.* Such is precisely the case instantly, except that here it is conceded that the informant was not an eyewitness and had no first hand knowledge of the crime, which of course makes the case for *denying* disclosure here stronger still.

In sum, there is no evidence in this record of any likelihood whatsoever that the informant could or would in any way exculpate Redmond. Hence, an exercise of the trial court's discretion to compel disclosure was a manifest abuse of discretion, as the *necessary prerequisite* for the exercise of that discretion had not been established. *See Commonwealth v. Bonasorte, supra,* 486 A.2d at 1374.

The disclosure order was contrary to well-established precedent. I would vacate the sanction order, and the underlying disclosure order as well.

### IV. *Inappropriateness of Suppression*

The majority also concludes that the effective dismissal of the charges against Redmond was an appropriate discovery sanction which was within the Court's discretion to impose. Majority Opinion, *supra*, at 304–309. I cannot agree.

The provisions of Pa.R.Crim.P. 305(E) are as follows:

**Remedy**

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or *may prohibit such party from introducing evidence not disclosed,* other than testimony of the defendant, or it may enter such other order as it deems *just under the circumstances.*

(Emphasis added). The sanction order did not merely "prohibit [the police officer] from introducing *evidence not disclosed,*" it suppressed *any* evidence of *any kind* from the officer, including evidence of Redmond's alleged recent confession to the officer. If this sanction was authorized at all, then, it must come then under the *residual* authorization to "enter such order as it deems *just under the circumstances."* As broad as the residual authorization may appear, our prior case law demonstrates that it does *not* include the authority exercised in this case.

It is true that when a party has failed to comply with a Pa.R.Crim.P. 305 discovery order, the trial court has broad discretion in choosing an appropriate remedy. *Commonwealth v. Gordon,* 364 Pa.Super. 521, 540–41, 528 A.2d 631, 641 (1987) (citing cases). "However, we have found termination of the prosecution to be 'a penalty far too drastic' for a prosecutor's violation of discovery rules." *Commonwealth v. Gordon, supra,* 528 A.2d at 641; *Commonwealth v. Woodell,* 344 Pa.Super. 487, 492, 496 A.2d 1210, 1213

(1985); *Commonwealth v. Parente,* 294 Pa.Super. 446, 452, 440 A.2d 549, 552 (1982) (appeal denied); *Commonwealth v. Yost,* 348 Pa.Super. 297, 502 A.2d 216 (1985). The Commonwealth asserts, the majority readily concedes, and I agree, that the sanction order imposed here leads inexorably to just that result by suppressing evidence of Redmond's alleged recent confession along with all other evidence from Officer Murphy.

In *Commonwealth v. Bonasorte, supra,* this Court did affirm a suppression order arising from a police officer's refusal to produce a confidential informant for an *in camera* interview. However, *Bonasorte* is materially distinguishable in two critical respects. First, the defendant's disclosure burden was clearly met in *Bonasorte* by the fact that the informant was a primary source for information included in a search warrant probable cause affidavit, and the trial court found that the Commonwealth's own evidence in the suppression hearing challenging the warrant raised serious doubts as to the existence of the alleged informant. Second, suppression was required in that case based upon the trial court's determination that the probable cause affidavit was wilfully false, the search unconstitutional, and the fruits of the search tainted, and *not* as a discovery sanction for failure to disclose the identity of the informant. 486 A.2d at 1371–74; *see also Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); *Commonwealth v. Miller,* 513 Pa. 118, 518 A.2d 1187 (1986); *Commonwealth v. Hall,* 451 Pa. 201, 302 A.2d 342 (1973).

Here, no search warrant was involved. Moreover, the informant's tips in no way led to the crucial evidence suppressed by the sanction order. Rather, it was a mere fortuitous coincidence that the officer who knew the identity of the confidential informant was also the officer to whom Redmond allegedly confessed, and who developed other evidence unrelated to and, in fact, contrary to the informant's tips. The informant's identity and his/her "tip"

were wholly unrelated to any of the inculpatory evidence suppressed by the sanction order.

## V. *Existence of More Appropriate Alternative Sanctions*

Beyond these grounds for dissent, there is a more basic and, I think, more compelling ground upon which to dissent. *The wrong people are being punished for the officer's alleged contempt/non-compliance.*

I do *not* find the officer to have been in error in this case. I find that he had every legal right to resist the improper disclosure order; and, perhaps even a moral duty to resist. Nonetheless, assuming, *arguendo*, that he was wrong, *even obstinately and contemptuously wrong*, I cannot agree that the charges against Redmond should therefore be dismissed. Rather, the burden of any sanctions for the alleged contempt/non-compliance should fall upon the officer, *individually*, rather than upon the Commonwealth and the interests of justice.

The majority blames the Commonwealth for the officer's alleged contempt. The theory upon which this "constructive" contempt finding is based, is that even though the prosecutor did not know the identity of the informant, the prosecutor had "control" of the information. (Majority Opinion, *supra*, at 299).

How so? Could the prosecutor have exercised power over the officer which the trial court could not? Certainly not. The court had authority to compel the disclosure on pain of contempt. The prosecutor, on the other hand, could do no more than ask for compliance, which is, of course, an insufficient ground upon which to rest the prosecution's presumed "control" over the information sought. The contempt, if any existed, was the officer's *alone*, and not the Commonwealth's.

In *Commonwealth v. Carson*, 510 Pa. 568, 510 A.2d 1233 (1986), our Supreme Court explained:

While a trial court must have authority to regulate attendance upon its schedule and concomitant authority to

sanction a breach, *the sanction must be visited upon the offender and not upon the interests of public justice.* The failure of a party to observe the orders of a court may result in a loss to a party in a civil action, because there the loss falls upon private interests and those who invoke the power of a court must be obedient to its orders or lose its powers to serve their purposes. *Criminal cases involve issues of public justice; issues that transcend the immediate parties. In criminal cases, sanctions may be imposed upon individuals, including counsel for either side; sanctions that vindicate the authority of the court to* maintain its schedule and *enforce its orders.*

510 A.2d at 1234. (Emphasis added).

The reasoning in *Carson* requires that any sanction, if appropriate for the failure to comply with the disclosure order, be imposed upon the recalcitrant officer, and not upon the Commonwealth and the interests of public justice. *Cf. Commonwealth v. Ferguson,* 381 Pa.Super. 23, 51–02, 552 A.2d 1075, 1089–90 (1988) (identical reasoning with regard to sanctions imposed on Commonwealth for a Commonwealth witness' failure to appear at a sentencing hearing). There is no reason why the police officer's alleged contempt, if any, should be made to inure to the benefit of the defendant. *See Commonwealth v. Carson, supra,* 510 A.2d at 1235 (Papadakos, J., concurring); *Commonwealth v. Ferguson, supra,* 552 A.2d at 1090. As this Court explained in *Ferguson:*

No Commonwealth employee is cloaked with an agency which would authorize wilful misconduct such as contempt of court; consequently, we see no reason why the sanction for contempt by a Commonwealth employee should be imposed upon the Commonwealth, rather than directly upon the employee. *Cf.* 42 Pa.C.S.A. §§ 8542(a)(2), 8550 (a local agency may not be held liable for the wilful misconduct of its employee, and an employ-

ee of a local agency enjoys no official immunity from liability for injuries arising from wilful misconduct). 552 A.2d 1090.[2]

Here, the trial court readily could have imposed contempt sanctions (fine or imprisonment) to compel compliance with the disclosure order. Instead, the trial court imposed a discovery sanction prohibiting any and all evidence from the recalcitrant officer, entirely regardless of whether the evidence was related to the informant or the informant's tip. This was far too high a price to exact for no real benefit— Redmond's alleged recent confession was suppressed along with other evidence *properly* obtained, and the prosecution's case substantially impaired, but the officer was not made to pay any *personal* price for the alleged non-compliance/contempt.[3]

The majority suggests that *Carson* may be distinguished in that no prejudice to the defendant was shown in *Carson.*

**2.** I note that I consider it a fundamental rule that sanctions should be borne by the party whose conduct triggers the sanction to the greatest extent possible. I have expressed this view previously in a variety of contexts. *See e.g. In re J.S.,* 387 Pa.Super. 432, 449–53, 564 A.2d 468, 477–78 (1989) (Kelly, J., concurring and dissenting) (the remedy for failing to hold required civil commitment hearings should be an immediate hearing, with sanctions imposed directly on the parties responsible for the improper detention; release of the patient without regard to the patient's need for treatment or restraint serves no interests); *Commonwealth v. Ferguson, supra,* 552 A.2d at 1089–90 (per Kelly, J.) (financial sanctions for failure of a Commonwealth witness to appear at a sentencing hearing should be borne by the witness, rather than the taxpayers); *Commonwealth v. Zeitlen,* 366 Pa.Super. 78, 86–87, 530 A.2d 900, 904–05 (1987) (sanctions for counsel's violation of briefing rules should be borne whenever possible by the counsel responsible, rather than a client who was powerless to prevent the violations). While it will not always be possible to impose direct sanctions, they should be preferred to indirect sanctions whenever practicable.

**3.** Exclusion of otherwise relevant evidence exacts a high societal cost which is not always justified by the right to be vindicated. *See New York v. Harris,* —— U.S. ——, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990); *Commonwealth v. Slaton,* 383 Pa.Super. 301, 341–42, 556 A.2d 1343, 1363–64 (1989) (Kelly, J., dissenting) (collecting cases); *Commonwealth v. Melson,* 383 Pa.Super. 139, 172, 556 A.2d 836, 852–53 (1989) (Kelly, J., dissenting). This is particularly true when the right can be otherwise fully vindicated without suppression. *See Commonwealth v. Gordon, supra; cf. Commonwealth v. Carson, supra.*

The language of *Carson* suggests no such distinction. Moreover, as noted above, I find no semblance of prejudice here. Still further, I find no reason why simply holding the officer in contempt to force the disclosure would not have vindicated fully the court's authority, and prevented whatever prejudice was anticipated from non-disclosure, *without* the serious deleterious effects which the court's sanction order necessarily imposes upon the interests of public justice.

### VI. *Improper Focus Regarding "Prejudice"*

In upholding the discovery/suppression order, the majority appears to focus upon the prejudice they *assume* had arisen between the murder on April 25, 1951, and the non-compliance with the trial court's disclosure order on September 30, 1988. While I find no prejudice established with respect to *that* time period (given the patent irrelevance of the identity of the confidential informant, or his/her hearsay evidence), I find *that* period wholly irrelevant to a determination of the appropriateness of the sanction order imposed.

Rather, the relevant time period was the time between the disclosure order on September 30, 1988 and the sanction order on October 28, 1988, the period of non-compliance. If no prejudice occurred between *those* dates, then there could be no justification for the trial court's failure to even attempt to simply direct compliance by the officer, on pain of contempt. I find no evidence of prejudice even suggested as to *that* time period.

In sum, I find that the discovery sanction imposed was in no sense "just under the circumstances." Pa.R.Crim.P. 305(E). I would vacate the order as a manifest abuse of discretion.

### Conclusion

For all of the foregoing reasons, I dissent. While the appeal taken from the disclosure order of September 30, 1988 must be quashed, both the disclosure order and the

322

sanction order should be vacated in the appeal from the sanction order of October 25, 1988.