484 A.2d 189

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Lamont BARKLEY.**

Superior Court of Pennsylvania.

Argued July 11, 1984.

Filed Nov. 9, 1984.

390

Dara A. DeCourcy, Deputy District Attorney, Pittsburgh, for Com., appellant.

John H. Corbett, Jr., Public Defender, Pittsburgh, for appellee.

Before ROWLEY, HESTER and ROBERTS, JJ.

ROBERTS, Judge:

The Commonwealth, District Attorney of Allegheny County, appeals from a pre-trial order entered in the above matter which prohibits the Commonwealth's use of evidence of an alleged robbery at appellee's forthcoming trial on the charge of criminal homicide, "for the purpose of establishing the alleged robbery as the underlying felony in furtherance of any Commonwealth theory seeking to establish second degree or 'felony' murder ...." The pre-trial order followed entry of a separate pre-trial order severing the

charges of robbery and criminal homicide for purposes of trial. Because the order has the effect of terminating prosecution on a theory of felony-murder and "substantially handicaps" prosecution on the charge of criminal homicide generally, the Commonwealth has taken a direct appeal. See *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963).

The alleged robbery which forms the basis for the Commonwealth's felony-murder theory occurred at approximately 12:30 p.m., on March 20, 1982, in the Borough of Penn Hills, Allegheny County. The alleged criminal homicide "committed while defendant was engaged as a principal or accomplice in the perpetration of a felony" occurred 25 hours later and 10 miles away, at approximately 1:30 p.m., on March 21, 1982, in the Oakland section of the City of Pittsburgh. The victim of the alleged criminal homicide, according to the Commonwealth's offer of proof, "had just alighted from a bus along with other passengers" when she was struck by an automobile being driven by appellee. City police had been engaged in a high-speed chase with appellee when the alleged homicide occurred. The chase commenced "some minutes" before the alleged homicide, when City police determined that appellee's vehicle matched the description of the getaway vehicle involved in the previous day's robbery in Penn Hills.

The Commonwealth's offer of proof included a representation that appellee matched the description of one of the perpetrators of the robbery which had been given by a witness, and that testimony would be forthcoming from the victim of the robbery which would positively identify appellee. The offer further represented that on the evening of the alleged homicide, appellee gave police detectives a statement in which he admitted his involvement in the alleged robbery and in the high-speed chase which led to the alleged homicide. Appellee specifically admitted, according to the offer, "that it was his belief that the police were at [the] time [of the high-speed chase], associating his vehicle as the one involved in the ... robbery." Shortly after the alleged

homicide, appellee also allegedly told his sister that he and " 'another guy' ... did a robbery and that today he saw a police car turn around and he thought the car was coming after him for the robbery and he got scared and took off."

Appellee, in his statement to police detectives, "indicated that [he and his accomplice] split the [robbery] proceeds of approximately $140.00," and further indicated that he had been both "out jogging" and at his residence for at least a portion of the 25 hours between the two alleged crimes. Additionally, the record shows that appellee allegedly engaged in another robbery in that 25-hour period. The Commonwealth has not proposed to link this other alleged robbery with the homicide of March 21, 1982.

■ We agree with the court of common pleas that on the facts presented, "the Commonwealth is seeking to stretch the felony-murder theory beyond limits indicated by [our] Supreme Court." Those limits, which were established under case law decided prior to the Crimes Code, provide that an actor may be found guilty of felony-murder only "if there was 'no break in the chain of events' between the killing and the [felony] such that the homicide 'had an ultimate relation to and close connection with the felony.' " *Commonwealth v. Kichline*, 468 Pa. 265, 273, 361 A.2d 282, 286 (1976), quoting *Commonwealth v. Carey*, 368 Pa. 157, 162, 82 A.2d 240, 242 (1951). Here, the alleged homicide occurred more than one full day after the alleged robbery. During the period between the alleged crimes, appellee divided the proceeds with his companion, went jogging, spent some time at home, and engaged, according to a separate charge, in a robbery which was unrelated to the alleged homicide. As the trial court held, we hold that on this record there was a "break in the chain of events" sufficiently obvious to foreclose further prosecution of the felony-murder charge.

The Commonwealth, in an effort to diminish the significance of the time and several events intervening between the alleged felony and the alleged felony-murder, emphasizes the admission by appellee that he attempted to elude

police out of fear of apprehension for the previous day's robbery. On the basis of this single factor, the Commonwealth would characterize the high-speed chase as "renewed flight," on which the felony-murder prosecution may properly be based.

■ Although appellee's purpose at the time of the alleged homicide is surely an important consideration, that purpose is by no means sufficient to establish that the death in this case occurred during "flight after committing" the alleged robbery, 18 Pa.C.S. § 2502(d). Under well-established caselaw, our Supreme Court looks to whether there is "unity" of "time, place, *and* purpose," *Commonwealth v. Kelly*, 333 Pa. 280, 4 A.2d 805 (1939), and 337 Pa. 171, 10 A.2d 431 (1940). In so considering deaths occurring during "flight," our Supreme Court has observed that "[t]here is unity of criminal action between the planning of a crime, its execution or attempted execution and the flight *from the scene*," id., 337 Pa. at 175, 10 A.2d at 433, not "flight" whenever and from wherever it occurs.

The rejection of the Commonwealth's "renewed flight" theory, based solely on appellee's admitted purpose at the time of the alleged homicide, is further compelled by the Crimes Code. The Crimes Code's definition of "perpetration of a felony," for purposes of the felony-murder doctrine, 18 Pa.C.S. § 2502(b), is very similar to its definition of the phrase "in the course of committing a theft," which is used in defining robbery, 18 Pa.C.S. § 3701(a). Under 18 Pa.C.S. § 2502(d), "perpetration of a felony" includes "[t]he act of a defendant in engaging in ... flight after committing ..." a specified felony. Under 18 Pa.C.S. § 3701(a), "[a]n act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft or in *flight after the attempt or commission.*" In elaborating upon this latter definition, Comment to the Model Penal Code (upon which the Crimes Code's definition is based) offers no "rule-of-thumb ... to delimit the time and space of 'flight,'" but does observe that

"[t]he concept of 'fresh pursuit' will be helpful in suggesting realistic boundaries between the occasion of the theft and a later distinct occasion when the escaped thief is apprehended."

American Law Institute, Model Penal Code § 222.1 Comment at p. 70 (Tentative Draft No. 11, April 27, 1960). Clearly, as this record shows, under the Commonwealth's theory of "renewed" flight, there can be no "realistic boundaries" and no "later distinct occasions."

Whether the time and events between the alleged robbery and the alleged homicide are characterized as having "broken the chain" under the standard of *Commonwealth v. Kichline*, supra, or whether the alleged homicide is viewed as not having occurred during a period of "fresh pursuit" by analogy to the modern formulation of flight after a theft, it must be concluded that the trial court properly refused to allow use of evidence of the alleged robbery of March 20, 1980, as proof that the death the next day was a felony-murder. The court's order is, therefore, affirmed.

Order affirmed.