544 A.2d 943

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Alexander SMITH, Appellant.**

Supreme Court of Pennsylvania.

Submitted Sept. 25, 1987.

Decided July 28, 1988.

Paul R. Gettleman, Zelienople, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Deputy Dist. Atty., Dara DeCourcy, Asst. Dist. Atty., Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT and ZAPPALA, JJ.

## OPINION

ZAPPALA, Justice.

On the evening of August 19, 1982, while a guest and in attendance at a party, at a residence located on the South Side of the City of Pittsburgh, the Appellant was arrested

and charged with criminal homicide and aggravated assault. Donald Kennelly, David Martelli and their friends appeared to have been uninvited guests at the party. A fight ensued during which the Appellant was struck in the face. He responded by securing a kitchen knife. What happened after the acquisition of the knife is in dispute. The Appellant claims that he was confronted by Martelli holding a crowbar and, in self-defense, fatally stabbed him. He then saw a friend being beaten by Kennelly, resulting in the Appellant stabbing Kennelly once and then throwing the knife over a fence. The Commonwealth argues that the Appellant first stabbed Kennelly and then Martelli. The order of the stabbings is critical in refuting the perceived justification defense.

The evening after the party, the Appellant turned himself in to the police and gave a statement admitting to stabbing Martelli in self-defense and then stabbing Kennelly. The knife was later recovered and found to have blood type "B" on it. Martelli had type "B" blood, while Kennelly has blood type "O".

As indicated, the Commonwealth filed two criminal informations charging the Appellant with aggravated assault upon Kennelly and homicide in the death of Martelli. On November 10, 1982, the Commonwealth filed a motion to consolidate the two informations. For some unexplained reason, the motion was never considered until October 19, 1983, the same time the trial court was conducting a hearing on the Appellant's motions to sever and to suppress certain statements of the Appellant. After taking testimony, the trial court granted the motion to sever, denied the motions to suppress and consolidate, and, after extensive oral argument, restricted the Commonwealth's use of to the facts of the aggravated assault charge in the voir dire process. The Commonwealth then appealed the trial court ruling to the Superior Court, believing that the trial court ordered the Commonwealth not to offer any evidence regarding the aggravated assault charge in the homicide trial. The Superior Court reversed the trial court, 350 Pa.Super.

635, 503 A.2d 458, concluding that it had erred in reversing the charges and in disallowing the introduction of the aggravated assault evidence during the homicide trial. We granted allocatur to review the appealability of the orders involved. For the reasons hereinafter, we now reverse.

There is no question that if the order the Commonwealth is appealing from is a suppression order, such review, although interlocutory, is permissible. *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985), and *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963). Furthermore, it is unnecessary for the Commonwealth to prove that the suppression order caused a substantial handicap, its good faith certification being sufficient. *Commonwealth v. Dugger, supra.* In *Commonwealth v. Bosurgi, supra,* we affirmed an interlocutory appeal of a suppression order because "... the Commonwealth should possess the right of an appellate review of the validity of a pre-trial order of suppression *where the effect of such order is to terminate the prosecution.*" (Emphasis in original). 411 Pa. at 62, 190 A.2d at 308. In *Commonwealth v. Dugger, supra,* the appellee was arrested and charged with possession of a controlled substance. The evidence suppressed was in fact the drugs discovered on the appellee's person. As in *Bosurgi,* the suppressed evidence was directly related to the charges, without which the Commonwealth could not realistically proceed. Our reason for permitting these interlocutory appeals was the finality aspect of a suppression order and the unfair position in which the Commonwealth was placed if it were required to establish its burden of proof without all of the evidence it deemed necessary. However, in this appeal, the Commonwealth is not appealing a suppression order. Therefore, the *Dugger* and *Bosurgi* rationale is not controlling.

The order here appealed from granted the severance of two criminal informations. In *Commonwealth v. Saunders*, 483 Pa. 29, 394 A.2d 522 (1978), we addressed the appealability of such an order and had no problem in concluding that such an order is interlocutory and thus not

appealable. The reasoning for our decision was that the Commonwealth was free to seek conviction on both counts in two separate trials. Thus, the finality aspect and the ensuing prejudice inherent in granting a suppression motion is not present when faced with a severance order.[1]

The appeal being interlocutory and no specific authority having been cited demonstrating that jurisdiction has been conferred upon this Court, there exists no jurisdiction for us to consider the Commonwealth appeal. The order of the Superior Court is reversed and the matter is remanded to the Court of Common Pleas of Allegheny County for trial.[2]

PAPADAKOS, J., concurred in the result.

LARSEN and McDERMOTT, JJ., filed dissenting opinions.

1. In *Commonwealth v. Barkley,* 335 Pa.Super. 389, 484 A.2d 189 (1984), the Superior Court accepted an appeal from the Commonwealth based in part upon the entry of an order severing charges of robbery and criminal homicide. To the extent that the decision in *Barkley* conflicts with the disposition of this appeal, *Barkley* is overruled.

2. After the conclusion of the suppression hearing at which time the learned trial judge denied the suppression motion but granted the severance motion, the parties commenced jury voir dire. A dispute arose during voir dire for the homicide trial as to whether questions with regard to the aggravated assault charges were relevant. The parties then sought clarification from the trial judge as to whether the evidence regarding the aggravated assault would be permitted to be used at the homicide trial. After lengthy oral arguments, the trial judge ruled that based upon the evidence presented during the suppression hearing and the Commonwealth's offer of proof, the Commonwealth lacked any evidence to substantiate its position that *Kennelly* was stabbed by the same knife as Martelli. As such, the trial judge concluded that the resulting prejudice to the appellant of the introduction of any evidence of the aggravated assault in the homicide trial would outweigh its probative value.

From a complete review of the record it is clear that the trial judge's ruling did not preclude the Commonwealth from introducing additional evidence at the time of the actual trial to bolster the probative value of its use of the aggravated assault evidence during the homicide trial. The trial judge only intended to restrict the use of the aggravated assault evidence in the context of the voir dire procedure. On remand, the Commonwealth may still attempt to demonstrate relevancy by the introduction of additional evidence to the trial court, subject, however, to any motion in limine the appellant may file.

ROLF LARSEN, Justice, dissenting.

I dissent and would recognize the Commonwealth's right to appeal any pretrial ruling which the Commonwealth has certified is likely to have the *practical effect* of terminating or substantially handicapping its prosecution, whether the pretrial ruling was entered in the context of a suppression hearing or otherwise. Thus I would extend the rule of limited appealability of pretrial rulings which we recognized in the suppression context in *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963) and *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985).

In the instant case, the lower court's ruling was a hybrid. It was not simply a pretrial severance ruling, nor was it simply a preliminary ruling on a motion in limine setting forth the "sense of the court" that evidence of the aggravated assault would probably not be admissible at the homicide prosecution. It was the combination of these intertwined erroneous rulings [1] which, in practical effect virtually assured that the Commonwealth would be substantially handicapped in its prosecution of appellant for murder. The court's ruling in limine, that the evidence of the aggravated assault would not be admissible in the murder prosecution, formed the justification for the court's severance of the prosecutions to prevent the evidence of the former charges from entering the trial of the latter, and it is unlikely that the trial court will change its mind at trial.

Having erroneously rejected the Commonwealth's proffer once before trial, and having severed the trial to keep the rejected evidence out of the trial for murder, it is extremely doubtful that, barring some last minute "Paul Drake" revelation, the lower court will change its mind at trial, and the Commonwealth should not be put in the position where it must proceed to trial and hope the court will have a change of heart. Without the right to appeal the lower court's rulings at the pretrial juncture, the Commonwealth will be

1. These rulings were clearly erroneous, as Superior Court correctly held. *See Commonwealth v. Lark*, 518 Pa. 290, 543 A.2d 491 (1988).

deprived of its only opportunity for appellate review of the validity of the exclusion of relevant evidence.

Former Chief Justice Roberts (sitting on the Superior Court as a Senior Judge) recognized the Commonwealth's right to appeal in circumstances such as are present here in *Commonwealth v. Barkley*, 335 Pa.Super. 389, 484 A.2d 189, 190 (1984):

> The Commonwealth, District Attorney of Allegheny County, appeals from a pre-trial order entered in the above matter which prohibits the Commonwealth's use of evidence of an alleged robbery at appellee's forthcoming trial on the charge of criminal homicide, "for the purpose of establishing the alleged robbery as the underlying felony in furtherance of any Commonwealth theory seeking to establish second degree or 'felony' murder...." The pre-trial order followed entry of a separate pre-trial order severing the charges of robbery and criminal homicide for purposes of trial. Because the order has the effect of terminating prosecution on a theory of felony-murder and "substantially handicaps" prosecution on the charge of criminal homicide generally, the Commonwealth has taken a direct appeal. *See Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963).

I would adopt the reasoning of the Superior Court in *Barkley* and in the instant case, and I would affirm the Superior Court's determination herein that the pretrial rulings of the lower court were appealable under *Bosurgi/Dugger*, and were erroneous.

McDERMOTT, Justice, dissenting.

In this case we are faced with a dilemma. The question is shall we open a door to what may be a flood of appeals from *in limine* evidentiary rulings, or must we permit what are clearly erroneous rulings to prevail because we would not be flooded by such appeals. In *Bosurgi*[1] and *Dugger*[2]

1. *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963).
2. *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985).

we have heretofore allowed appeals from *suppression* orders where the Commonwealth's case has been handicapped. In the same vein I would resolve the question here by allowing an appeal [3] because when the Commonwealth is obliged to proceed to trial under erroneous evidential rulings, given *in limine,* then the consequences may be incurable.[4]

Turning to the facts of this case, the Commonwealth offered to prove that two persons were stabbed on the same occasion, and that sequence of the stabbings dispute not only a proffer of self defense, but would show an intent to kill either or both victims. Certainly, the stabbing of two people at the same time bears directly upon the history of the occasion, and who was stabbed first can bear upon the intent of the stabber. I believe the learned trial judge below made too sharp a distinction in holding that each stabbing was a discrete offense unrelated and unrelatable to each other. This is particularly so in that the Commonwealth offered an expert witness to contradict or establish, as necessary, that the blood found on the knife was conclusive in determining the sequence of the stabbings. Further, I believe the trial judge erred in passing upon the credibility of proffered evidence in determining its relevancy and admissibility. It is for the trier of fact at trial, and not in an *in limine* proceeding, that credibility is determined.

I would affirm the Superior Court.

3. I do not accept the argument that to allow such an appeal will open the floodgates to innumerable pre-trial appeals. We can stem the tide of appeals by the Commonwealth by strict enforcement of disciplinary rules against frivolity and delay.

4. By contrast, a defendant convicted under an erroneous ruling always has the opportunity to cure the defect on appeal.