J-S01040-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BETH ANN MASON | : | No. 1091 MDA 2018 |

Appeal from the Order Entered June 26, 2018
In the Court of Common Pleas of Franklin County Criminal Division at
No(s): CP-28-CR-0002352-2017

BEFORE:   PANELLA, P.J., MURRAY, J., and PELLEGRINI*, J.

MEMORANDUM BY PELLEGRINI, J.:                    **FILED MARCH 07, 2019**

The Commonwealth appeals from an order from the Court of Common

Pleas of the Thirty-Ninth Judicial District-Franklin County Division (trial court)

excluding an audio and video recording that it found was obtained in violation

of the Wiretapping and Electronic Surveillance Control Act (the Wiretap Act).[1]

Based on the pertinent facts and applicable law, we affirm in part and reverse

in part the trial court's order.[2]

---

[1] 18 Pa.C.S. §§ 5701-5782.

[2] "Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions." ***Commonwealth. v. Korn,*** 139 A.3d 249, 253 (Pa. Super. 2016) (quoting ***Commonwealth v. Brown***, 996 A.2d 473, 476 (Pa. 2010) (citation omitted)). As with a trial court's factual findings, rulings on a motion's

---

*   Retired Senior Judge assigned to the Superior Court.

**I.**

Appellee Beth Ann Mason (Mason) was hired by Eric Valle (Valle) to work as a nanny for his six children. About a month into Mason's tenure, Valle's three-year-old son told him that Mason had been striking the other children. The son also reported that Mason was "thumbing" him in the face. Valle saw occasional marks on his son's face which seemed to corroborate the account. At some point, Valle noticed that his two-year-old daughter had a split lip and that his other children were uncomfortable around Mason.

Valle confronted Mason about his children's injuries and was unsatisfied with her denials. Approximately two months later, after he spoke to his son about Mason, Valle installed a hidden recording device in the children's bedroom without informing Mason. The device eventually captured audio and video footage of Mason yelling at one of the young children before shoving her into a crib where Mason purportedly struck her several times.

Valle turned over the recording of this incident to the police. The Commonwealth charged Mason with aggravated assault, simple assault and child endangerment. After her arraignment, she filed a habeas corpus motion, which was granted in part as to the sufficiency of the evidence for the aggravated assault count. Over 30 days after her arraignment, Mason filed

---

timeliness are reviewed under an abuse of discretion standard. *See Commonwealth v. Cooke*, 394 A.2d 1271, 1274 (Pa. Super. 1978).

her omnibus pretrial motion, which included her grounds for excluding from trial all audio and video footage captured by Valle's hidden recording device.

At the evidentiary hearing, the trial court overruled the Commonwealth's objections under Pennsylvania Rules of Criminal Procedure 578 and 579. In its written opinion, the trial court also reasoned that the audio and video footage captured by Valle's recording device had to be completely excluded because by capturing audio and video of Mason without her knowledge, Valle made the recording in contravention of Section 5721.1(a) of the Wiretap Act.

The Commonwealth then filed this interlocutory appeal, certifying that the trial court's ruling would substantially handicap or effectively terminate its prosecution of Mason. *See* Pa.R.A.P. 311(d). In its appellate brief, the Commonwealth raised the following issues:

- Whether the trial court erred in overruling its objections under Rules 578 and 579 based on the lack of prejudice to the Commonwealth.

- Whether the video and non-verbal audio portions of the subject recording qualify as a protected "communication" under the Wiretap Act.

- Whether Mason had a justified expectation that she would not be recorded while working as a nanny in Valle's home.

- Whether the Commonwealth satisfied the Wiretap Act's "crime exception" for admitting into evidence recordings which were not pre-authorized by court order.

## II.

The Commonwealth objected to Mason's omnibus pretrial motion on two procedural grounds. The Commonwealth argued that the omnibus motion was (a) improperly filed under Pennsylvania Rule of Criminal Procedure 578 since Mason had previously filed a habeas corpus motion, and (b) untimely under Rule 579 because it was filed over 30 days after the date of Mason's arraignment.[3] The trial court overruled those procedural objections because the record contained no evidence that the Commonwealth suffered prejudice due to the time and manner in which Mason filed her omnibus motion.

The Commonwealth has taken this appeal pursuant to Pennsylvania Rule of Appellate Procedure 311(d), certifying that the trial court's order "will terminate or substantially handicap the prosecution." The Commonwealth is appealing the trial court's decision to **hear** the motion as well as to **grant** it.

In criminal cases, such a certification permits an interlocutory appeal as a matter of right. Although a certification of hardship under Rule 311(d) must be afforded deference, we do not have to accept the certification if the issue does not substantially handicap the prosecution of the Commonwealth's

---

[3] Rule 578 provides that, "[u]nless otherwise required in the interests of justice, all pretrial requests for relief shall be included in one omnibus motion." Mason's omnibus pretrial motion, which included her grounds for excluding the subject recording, was filed only after she had filed a separate pretrial motion for habeas corpus relief. Mason admits that her omnibus motion was filed beyond the time allotted by Rule 579.

case. Because the operation of Rule 311(d) concerns our jurisdiction, we may address it *sua sponte*. **See Fried v. Fried**, 501 A.2d 211, 212-13 (Pa. 1985).

Here, the granting of Mason's motion to exclude the recording is clearly the type of order that could impact the prosecution for the purposes of Rule 311(d), but the discrete decision to hear the motion is clearly not. **See Commonwealth v. Woodard**, 136 A.3d 1003 (Pa. Super. 2016) (ruling on a motion to join informations is not reviewable under Rule 311(d) because it had no effect on the Commonwealth's ability to prosecute); **Commonwealth v. Smith**, 544 A.2d 943, 945 (Pa. 1988) (holding that severance of two informations was not reviewable under Rule 311(d)). Accordingly, because we cannot review the trial court's procedural rulings on interlocutory appeal, the only issue we have jurisdiction to hear is the subject recording's admissibility at trial.

## III.

The question now before us is whether and to what extent the audio and video recordings of Mason are excludable under the Wiretap Act.[4] Generally, the Wiretap Act provides that "no person shall disclose the contents of any wire, electronic or oral communication, or evidence derived therefrom, in any

---

[4] The parties agree that in the absence of government action, Mason suffered no constitutional violation of her privacy rights. The crux of their dispute is whether, as an evidentiary matter, the Wiretap Act makes Valle's recordings inadmissible.

proceeding in any court, board or agency of this Commonwealth." 18 Pa.C.S. § 5721.1(a).[5] "Any aggrieved party in a court proceeding may move to exclude the contents of any wire, electronic or oral communication, or evidence derived therefrom[.]" 18 Pa.C.S. § 5721.1(b). An "oral communication" is "uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 Pa.C.S. § 5702. "Intercept" is defined in pertinent part as "aural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device." *Id.*

## A.

The Wiretap Act's definitional section controls the scope of Mason's protections and the admissibility of her recorded activity. To the extent that Valle's hidden recording device captured words which Mason uttered, the Wiretap Act clearly encompasses them. Assuming that Mason had a justified expectation that she was speaking privately (which we analyze in more detail below), her verbal utterances are considered "oral communications" which were "intercepted" by Valle's device. Without judicial authorization or an

---

[5] The enumerated grounds for exclusion include, in pertinent part, (1) making the recording without "a court order of authorization under section 5712, and no exception to that requirement in section 5704 applied."

applicable exception, the communications are subject to exclusion under the Wiretap Act. *See* 18 Pa.C.S. § 5721.1(b).

There are also some non-verbal sounds on the recording which may inform a fact-finder of the excluded words' substance, purport or meaning. These include the purported sounds of Mason shoving or hitting a child. The Commonwealth argues that even if Mason's words are excludable, the remaining audio is admissible because it would not reveal anything about what she orally communicated.

However, the Wiretap Act provides that if an oral communication is rendered inadmissible, then so is the "evidence derived therefrom." 18 Pa.C.S. § 5721.1(a)(1). Also rendered inadmissible are the "contents" of such a communication, which includes "**any information** concerning the substance, purport, or meaning of that communication." 18 Pa.C.S. § 5702 (emphasis added). Because the verbal and non-verbal sounds which the device captured from Mason are protected by the Wiretap Act, we find no basis in the record or in the applicable law to disturb the order excluding all of the audio content in the subject recording.[6]

---

[6] The dissent would find the non-verbal sounds to be admissible at trial on the ground that they are totally independent of Mason's oral communications. However, the trial court assessed the contents of the audio recording as a whole and found them to be so intertwined that admitting the non-verbal portion would necessarily reveal to the jury the substance, purport, or meaning of what Mason said. We must defer to the trial court's finding of fact in this regard because it was supported by record evidence.

**B.**

The Commonwealth contends that even if the audio portion of Valle's recording is generally subject to exclusion, the Wiretap Act only protects oral communications made when the speaker has "an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 Pa.C.S. § 5702; *see Commonwealth v. Dewar*, 674 A.2d 714, 718 (Pa. Super. 1996) ("[T]he Act requires that the person uttering the words [has] a justifiable expectation that such words are not intercepted, using similar principles employed to determine whether the utterer had an expectation of privacy."); *Commonwealth v. Spangler*, 809 A.2d 234, 236-38 (Pa. 2002) (analogizing constitutional privacy interests with the "justified expectation" analysis of the Wiretap Act).[7] Under the Wiretap Act, courts apply an objective standard when assessing the reasonableness of an expectation of non-interception. *See Agnew v. Dupler*, 717 A.2d 519, 523 (Pa. 1998).

The recording here took place inside a child's bedroom in Valle's home. While in her capacity as a nanny, that area functioned as Mason's place of work. There is no evidence that Mason was ever told that she would be audio

---

[7] Because the subject video recording falls outside of the Wiretap Act, it is unnecessary to determine whether Mason had a justified expectation that she was not being video recorded.

- 8 -

monitored. Objectively, the record does not suggest that she had any reason to think that any of her personal communications would be intercepted in the home.[8]

"Appellate courts have held that employees have a reasonable expectation of privacy in certain areas of their workplace." **Commonwealth v. Cruz**, 166 A.3d 1249, 1255 (Pa. Super. 2017); **see City of Ontario v. Quon**, 560 U.S. 746 (2010) (recognizing a heightened level of privacy in the workplace); **O'Connor v. Ortega**, 480 U.S. 709 (1987) ("As with the expectation of privacy in one's home, [an expectation of privacy] in one's place of business is 'based upon societal expectations that have deep roots in the [Fourth] Amendment.'") (quotation omitted). Overnight guests in another's home also have a long-recognized expectation of privacy. **See Minnesota v. Olson**, 495 U.S. 91, 98 (1990).

Based on Mason's status as an employee and regular guest in Valle's home, she had a justified expectation that she would not be audio recorded.[9]

_____

[8] Mason may have discovered the hidden recording device at some point, but the record does not indicate when that discovery occurred, making it irrelevant for present purposes.

[9] The dissent posits that Mason had the burden of establishing this expectation of non-interception for the purposes of the Wiretap Act, and would hold that she failed to carry that burden. We conclude that, regardless of who bears the initial burden of proof, the record facts and analogous case law establish that Mason had such an expectation. **See People v. Moreno**, 2 Cal.App.4th 577, 583-85 (Cal. Ct. App. 1992) (recognizing that since babysitters have the right to exclude others from the household, they enjoy a level of privacy in a

Her personal conversations had nothing to do with child care and there was no reason for Mason to suspect that Valle would intercept them. Mason's communications and any non-verbal sounds she made or caused in Valle's home are within the purview of the Wiretap Act.

## C.

The Commonwealth also contends that the circumstances of this case satisfy a "crime exception" to the Wiretap Act. Under Section 5704(17), a victim of a crime or a witness does not need prior judicial approval to intercept a communication if they have "reasonable suspicion" that the surveilled person is committing or is about to commit a "crime of violence," and there is "reason to believe" that "the evidence of the crime may be obtained from the interception." Section 5704(17) refers only to particular "crimes of violence," as defined in Section 5702. In that latter provision, the class of offenses is narrowly defined to include crimes such as murder, rape, kidnapping or robbery. As the responding party here, the Commonwealth has the burden of proof under a preponderance standard. **See** 18 Pa.C.S. § 5721.1(c)(4).

---

home beyond even that of an overnight guest); **State v. Anonymous**, 480 A.2d 600, 608-09 (Conn. Sup. Ct. 1984) (reasoning that "[a]s the caretaker of the child, [the babysitter] undoubtedly had a socially acceptable expectation of privacy [in the home]."); **see also State v. Elrod**, 395 S.W.3d 869, 878 (Tex. Ct. App. 2013) (holding that a babysitter had an expectation of privacy because she "had dominion and control over the residence and had the right, perhaps even the duty, to exclude others from the home").

The Commonwealth attempts to meet its burden by contending that Valle had reasonable suspicion of an attempted or completed "aggravated assault" as defined in Sections 2702(a)(1) and (2). These are the only two provisions for aggravated assault enumerated in the definition of "crime of violence" in Section 5702.[10] Elements of the offenses include an attempt "to cause serious bodily injury" and causing serious bodily injury through "an extreme indifference to the value of human life." 18 Pa.C.S. § 2702(a)(1). "Serious bodily injury" is an injury "which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2602.

Valle testified at the evidentiary hearing that he learned about injuries to his children about a month after Mason began working as a nanny in his home. The hidden recording device was not installed until about two months later. These facts could arguably give Valle a reason to believe that Mason had at one point assaulted one of his children. Yet, nothing in the record refutes the trial court's factual finding that there is no clear evidence as to

---

[10] The definition of "crime of violence" under Section 5702 does not list the offense of aggravated assault on a person under the age of 18. *See* 18 Pa.C.S. § 2702(a)(8). The Commonwealth cannot and does not rely on that offense as a basis for satisfying the crime exception of Section 5704(17).

when the injuries occurred, whether the injuries were ongoing, and how long Valle waited to install his device after those injuries were noted.

These limited facts are insufficient to show that Valle had a reasonable basis to think that recording Mason would produce evidence of the type of aggravated assault necessary to satisfy the Wiretap Act's crime exception.[11] The Commonwealth failed to carry its burden of proof under Section 5704(17) and the audio portion of Valle's recording is inadmissible. As discussed below, however, the video portion of Valle's recording is admissible at Mason's trial, and the trial court erred in excluding it.

**IV.**

The Commonwealth contends that even if the audio portion of Valle's recording is inadmissible, the trial court erred in finding that the video portion falls within the purview of the Wiretap Act. Conversely, Mason argues that the video footage was properly excluded under the Wiretap Act because it was an "electronic communication."

The Wiretap Act's definition of the term in Section 5702 resolves the issue in the Commonwealth's favor. The section defines the term as follows:

---

[11] The dissent concludes that Valle had reasonable suspicion of an aggravated assault at the time he installed the camera based on reports of "thumbing," a split lip, and bruises on his children. We respectfully disagree and instead defer to the trial court's finding that the record was too vague as to the nature and extent of the injuries at the time of installation. Moreover, since only the circumstances known to Valle at the time of installation could give him the reasonable suspicion necessary to satisfy the Wiretap Act's crime exception, the contents of Valle's recording may not be considered in that analysis.

Any **transfer** of signs, signals, writing, **images**, sounds, data or intelligence of any nature **transmitted** in whole or in part **by a** wire, radio, electromagnetic, photoelectronic or photo-optical system, except:

    (1)   Deleted.

    (2)   Any wire or oral communication.

    (3)   Any communication made through a tone-only paging device.

    (4)   Any communication from a tracking device (as defined in this section).

18 Pa. C.S. § 5702 (emphasis added).

The gist of Mason's argument is that her image was "transferred" and/or "transmitted" to Valle's video recording device. However, under the above definition, the "image" must be transferred or transmitted "by a wire, a radio, electromagnetic, photoelectronic or photo-optical system." Mason's image was not sent to the recording device by any of those types of systems, so her image was not an "electronic communication" or the evidence derived therefrom. As such, Section 5721.1(a) of the Wiretap Act does not prohibit the video's disclosure at trial, and Section 5721.1(b) does not provide a vehicle for the video's exclusion.

Our conclusion that the Wiretap Act does not encompass Valle's video footage is consistent with numerous federal and state court decisions, all of which hold that video recordings are not excludable under nearly identical wiretap statutes. *See United States v. Larios*, 593 F.3d 82, 90 (1st Cir. 2010); *United States v. Jackson*, 213 F.3d 1269, 1280 (10th Cir. 2000);

***United States v. Falls****,* 34 F.3d 674, 679–80 (8th Cir. 1994); ***United States v. Koyomejian***, 970 F.2d 536, 541 (9th Cir. 1992); ***United States v. Cuevas–Sanchez****,* 821 F.2d 248, 251 (5th Cir.1987); ***United States v. Biasucci****,* 786 F.2d 504, 508–09 (2d Cir. 1986); ***United States v. Torres****,* 751 F.2d 875, 880-86 (7th Cir. 1984); ***see also Minotty v. Baudo***, 42 So.3d 824, 829-33 (Fla. 4th DCA 2010); ***State v. Diaz***, 706 A.2d 264, 267-68 (NJ. Super. Ct. 1998). Thus, the trial court erred in excluding the video portion of Valle's recording.

For the reasons set forth, the Order is affirmed in part and reversed in part. Jurisdiction is relinquished.

Judge Murray concurs in the result.

President Judge Panella files a concurring/dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/07/2019