J-A20025-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                        :           PENNSYLVANIA
                        :

        v.                  :
                        :

ANDY M. PERALTA-CRUZ       :
                        :

       Appellant      :   No. 1187 MDA 2022

Appeal from the Judgment of Sentence Entered September 21, 2020
In the Court of Common Pleas of Lancaster County
Criminal Division at CP-36-CR-0002116-2019

BEFORE:   PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.*

MEMORANDUM BY MURRAY, J.:         **FILED SEPTEMBER 19, 2023**

Andy M. Peralta-Cruz (Appellant) appeals *nunc pro tunc* from the judgment of sentence imposed after a jury convicted him of one count each of robbery, defiant trespass, and theft by unlawful taking; and two counts of simple assault.[1]  We affirm.

The trial court recited the underlying facts:

> On December 12, 2018, [Appellant] and his friend, Starling Delacruz-Ramirez [Delacruz-Ramirez], entered the Friendly Greek, a restaurant and carry-out beer store, located in the City of Lancaster, Lancaster County, Pennsylvania.  (Notes of Trial Testimony, December 11, 2019 at 68)….  Joseph Armstrong [Armstrong] and James Toth [Toth] were working at the restaurant at that time.  (*Id.*)  Armstrong worked at the counter and Toth worked in the kitchen.  (*Id.* at 85.)  When [Appellant] and Delacruz-Ramirez asked to purchase two frozen alcoholic

---

* Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(iv), 3503(b)(1)(i), 3921(a), and 2701(a)(1).

beverages, Armstrong questioned both their ages and asked for identification. (*Id.* at 66-67.) [Appellant] and Delacruz-Ramirez, being underage, declined to show their identification, opting instead to leave the restaurant. (*Id.*) They returned to [Appellant's] vehicle parked just outside in view of the restaurant's video monitoring system.[FN] (*Id.*)

> [FN] Virtually the entire episode outlined herein was recorded on the restaurant's video monitoring system and shown to the jury.

Shortly thereafter, [Appellant] and Delacruz-Ramirez encountered a woman making her way toward the entrance of the restaurant. (*Id.* at 73.) They stopped her, asked if she would purchase the drinks, and gave her the money for the purchase. (*Id.*) The woman agreed and then went into the restaurant, made her own purchases, along with the two drinks, and exited the restaurant. (*Id.* at 70-71.) Armstrong watched the video monitoring system and saw the woman go outside and deliver the drinks to [Appellant] and Delacruz-Ramirez. (*Id.* at 72.)

At that point, Armstrong exited the restaurant, approached the vehicle, and confronted [Appellant] and Delacruz-Ramirez about the alcohol. (*Id.* at 76.) When [Appellant] refused to return the drinks, Armstrong reached into the car and grabbed the drink from [Appellant]. (*Id.* at 79-80.) When he did so, the cup broke, and the drink spilled over the lap of [Appellant] and the interior of his car. (*Id.*) Then [Appellant] threw the other drink at Armstrong who then returned to the restaurant. (*Id.*) Apparently angered by the encounter, [Appellant] chased Armstrong and punched him from behind. (*Id.* at 81.) Armstrong threatened to call the police, at which point [Appellant] punched Armstrong a second time. (*Id.* at 82.) Armstrong then pushed [Appellant] out the door and went to the counter of the restaurant to grab the phone. (*Id.* at 83.)

[Appellant] and Delacruz-Ramirez both followed Armstrong, and, flanking each side of the counter, demanding a refund for their beverages. (*Id.*) Armstrong refused and told them again to leave. (*Id.*) Instead of leaving, [Appellant] grabbed [money] from the tip jar sitting next to the register. (*Id.* at 84.) He also began throwing objects and attempted to punch Armstrong from across the counter. (*Id.*) At one point, [Appellant] reached for a stapler sitting near the register, but Toth came up from the

kitchen and grabbed it before [Appellant] could. (*Id.*) [Appellant] was the sole aggressor, although Delacruz-Ramirez was "egging him on." (*Id.* 87, 95.)

After Toth came to the counter, [Appellant] and Delacruz-Ramirez left the store and returned to the parking lot. (*Id.* at 95-96.) Armstrong and Toth followed them as far as the doorway of the restaurant. (*Id.*) After an exchange of words, [Appellant] and Delacruz-Ramirez appeared to head toward their car, so Armstrong and Toth turned to go back inside the restaurant. (*Id.*) [Appellant] then, suddenly and without warning, ran up behind Toth and punched him on the side of the head. (*Id.* at 96-97). Toth was knocked unconscious and fell to the ground. (*Id.*) [Appellant] and Delacruz-Ramirez went back to [Appellant's] car and immediately drove away. (*Id.*)

Trial Court Opinion, 7/21/20, at 1-3 (some citations and punctuation modified; one footnote in original, one footnote omitted).

The Commonwealth charged Appellant with the aforementioned crimes and he proceeded to a jury trial. On December 16, 2019, the jury returned guilty verdicts. On September 21, 2020, the trial court sentenced Appellant to an aggregate 6 – 23 months of incarceration, followed by 3 years of probation. After several delays caused by the COVID-19 pandemic and breakdowns in the judicial process, Appellant appealed *nunc pro tunc*.[2]

Appellant raises a single issue:

Was the evidence sufficient to sustain [Appellant's] conviction for robbery where there was a break in the chain of events inasmuch as that the assault did not happen in the course of a theft or during flight therefrom?

---

[2] Appellant has complied with Pa.R.A.P. 1925. On October 19, 2022, the trial court issued a memorandum adopting its July 21, 2020 opinion.

Appellant's Brief at 2.

Appellant challenges the sufficiency of the evidence. *Id.* at 3-5. When reviewing a sufficiency challenge, we determine "whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all elements of the offense beyond a reasonable doubt." *Commonwealth v. May*, 887 A.2d 750, 753 (Pa. 2005). A conviction "may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." *Commonwealth v. Miller*, 172 A.3d 632, 640 (Pa. Super. 2017). In conducting review, "the appellate court may not weigh the evidence and substitute its judgment for the fact-finder." *Id.*

A person commits robbery if, "in the course of committing a theft, he[] inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury." 18 Pa.C.S.A. § 3701(a)(1)(iv). "An act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft or in flight after the attempt or commission." 18 Pa.C.S.A. § 3701(a)(2). This Court has observed that while there is

> no rule of thumb … to delimit the time and space of flight, … the concept of fresh pursuit [is] be helpful in suggesting realistic boundaries between the occasion of the theft and a later distinct occasion when the thief is apprehended.

- 4 -

***Commonwealth v. Maldonado***, 494 A.2d 402, 408 (Pa. Super. 1985)

(citations, brackets and quotation marks omitted). For bodily harm or the

threat of bodily harm to be deemed part of the theft, there must be no "break

in the chain of events between the theft and bodily injury or threat thereof."

***Id.*** (quotation marks omitted).

> Appellant argues
>
> the theft occurred well before [Appellant] inflicted bodily injury on the victim. Thus, the question for sufficiency purposes is whether [Appellant] inflicted bodily injury in flight from the theft. He did not because there was no flight from the theft.
>
> There must have been some nexus between the assault [Appellant] perpetrated and his decision to leave as a result of the theft he committed. Here, there was no flight. To the contrary, in his belligerent state, [Appellant] was **refusing to leave** the property and was throwing things around the store and screaming and hollering at the employees. When he got outside, the employees were not in pursuit of him for the purpose of apprehending him, but rather were **trying to get him to leave.**

Appellant's Brief at 4 (emphasis in original).

We cannot agree. Appellant views the evidence in his favor, rather than

the favor of the Commonwealth as verdict winner. ***See May***, 887 A.2d at

753; Appellant's Brief at 4-5. Appellant also disregards that his robbery

charge was based on Appellant assaulting Armstrong and Toth, not just Toth.

***See id.***; ***see also*** Information, 4/26/19, at 1. As the trial court explained:

> The evidence presented showed [Appellant] committed theft by taking cash from the tip jar. Before and after taking the tip money, [Appellant] punched Armstrong several times, attempted to punch him several more times, and threw a bar code scanner across the counter at him. After the theft of the tip money occurred, [Appellant], while in the process of fleeing the scene,

ran back and punched Toth from behind, causing him to lose consciousness and suffer serious injuries. This was more than ample evidence to prove the elements of robbery, and the jury properly found that the Commonwealth carried their burden on this charge.

Trial Court Opinion, 7/21/20, at 5.

At trial, the parties stipulated that video evidence showed "a true and accurate representation of the incident that took place December 12, 2018, approximately between 5:46 p.m. and 5:55 p.m." N.T., 12/11/19, at 68. Armstrong testified that as Appellant was "grabbing money" from the tip jar, Appellant threw a scanner and threw punches at Armstrong. *Id.* at 84, 94. When Armstrong indicated he was calling police, Appellant punched both Armstrong and Toth. *Id.* at 89. The assaults were documented as occurring between 5:51:59 and 5:52:52 p.m. *Id.* at 90-92. Armstrong testified that as Appellant was leaving the restaurant, he punched Toth again. *Id.* at 94. When Armstrong and Toth followed the men outside the restaurant, Appellant turned around and punched Toth. *Id.* at 96. The punch caused Toth to lose consciousness, and was documented at 5:53:04 p.m. *Id.* at 98.

This case is comparable to **Maldonado**, where the defendant stole a box containing cash and other items from the victim. **Maldonado**, 494 A.2d at 404–06. When the victim and a friend confronted the defendant, the defendant discarded the box and fled. *Id.* The victim eventually caught up to the defendant, a scuffle ensued, and the defendant stabbed the victim to death. *Id.* The defendant argued he did not commit robbery because the

stabbing did not occur during the theft, as provided in Section 3701(a)(2). In rejecting the defendant's argument, this Court stated that Section 3701(a)(2) includes behavior, including flight, which occurs "after the theft might be said to be accomplished." ***Id.*** at 408. We held that the facts showed no break in the chain of events to separate the defendant discarding the stolen goods from his stabbing of the victim. ***Id.*** at 408–09. We observed that the victim was killed, "[w]ithin seconds, or at most minutes" of the theft. ***Id.*** at 409.

Here, the evidence showed that in less than five minutes, Appellant stole tip money, threw objects, and punched Armstrong and Toth. There was no break in the chain of events. Therefore, the evidence was sufficient to sustain Appellant's robbery conviction. ***Maldonado***, 494 A.2d at 408-09. ***Cf. Commonwealth v. Barkley***, 484 A.2d 189, 190-92 (Pa. Super. 1984), ***overruled on unrelated grounds by Commonwealth v. Smith***, 544 A.2d 943 (Pa. 1988) (concluding there was a "break in the chain of events" between a theft and a murder that occurred more than a day and ten miles apart from the theft).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 09/19/2023